**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

PAMELA GOLDING,                          :
                                         :
             Plaintiff,                   :
                                         :
v.                                        :          CASE NO.: 7:19-cv-67 (WLS)
                                         :
WAL-MART STORES EAST, LP,                :
                                         :
             Defendant.                   :
_____:

## ORDER

Before the Court are several post-judgment motions by Defendant Wal-Mart Stores East, LP, filed June 15, 2021:

(1) Defendant's Renewed Motion for Mistrial or, in the Alternative, Motion for New Trial and Motion for Sanctions for Plaintiff's Counsel's Misconduct at Trial (Doc. 114);

(2) Defendant's Amended Renewed Motion for Judgment as a Matter of Law (Doc. 115);

(3) Defendant's Amended Motion for Judgment as a Matter of Law on Plaintiff's Claim for Attorneys' Fees and Expenses Under O.C.G.A. 9-11-68(e) (Doc. 116); and

(4) Defendant's Motion for New Trial as an Alternative to Motion for Judgment as a Matter of Law (Doc. 117).

On June 23, 2021, Wal-Mart requested oral argument on these motions. (Doc. 119.) The Court denied this request, finding that none of Wal-Mart's motions raise issues of such nature or concern that a hearing will materially help the Court, especially since the Court already heard oral arguments on each of Wal-Mart's motions when Wal-Mart first raised them orally at trial. (Doc. 121.)

On July 20, 2021, Plaintiff Pamela Golding filed responses to each of the above motions. (Docs. 123; 124; 125; 126.) On August 17, 2021, Wal-Mart replied to each response. (Docs. 128; 129; 130; 131.) With this Court's permission, on September 7, 2021 Plaintiff Pamela Golding filed a sur-reply (Doc. 138) as to the issue of Attorney's Fees. Wal-Mart's motions are now ripe for review.

1

## BACKGROUND

As background, this is a slip-and-fall case. Plaintiff Pamela Golding claimed that, while shopping at one of Wal-Mart's stores, she slipped and fell in a puddle of liquid left on the floor due to Wal-Mart's negligence. She fractured her thumb, requiring surgery. After her surgery, the joints and bones of her hand became infected with bacteria known as Methicillin-Resistant Staphylococcus Aureus, or "MRSA." Golding sought to hold Wal-Mart liable for her injuries. (Docs. 1; 1-2 at 4–10.)

Golding filed this action against Wal-Mart on April 4, 2019 in the State Court of Tift County, Georgia. (Doc. 1.) Wal-Mart answered the Complaint on May 1, 2019 (Doc. 1-7) before removing the case to this Court on May 10, 2019. (Doc. 1.)

A jury trial was held from Monday, May 10, 2021 through Monday, May 17, 2021 in Valdosta, Georgia. (Docs. 106; 107; 108; 109; 110; 111.) At trial, Golding's primary theories were (1) that Wal-Mart failed to exercise reasonable care in inspecting the premises and failed to have reasonably safe cleaning procedures because it was cleaning the store while customers were still shopping in the store, and (2) that Wal-Mart's failure to discover and remove the hazard that injured Golding proximately caused both her initial injury to her hand and her later injuries resulting from a MRSA infection to her wounds.

Wal-Mart's primary theories were (1) that Wal-Mart exercised reasonable care in inspecting the premises and therefore was not liable for any of Golding's injuries and (2) that if Wal-Mart was liable for at least some of Golding's injuries, it was not liable for Golding's MRSA injuries because those were caused by Golding's own failure to mitigate her damages by keeping her wounds clean and dry so they would not become infected.

Trial proceeded in two phases. In Phase One, the Jury was asked to determine whether Wal-Mart was liable for Plaintiff Golding's injuries, specifically the fractured thumb and subsequent MRSA infection. In Phase Two, the Jury was asked to consider whether the Defendant had presented a frivolous claim or defense, entitling the Plaintiff to attorney's fees under O.C.G.A. § 9-11-68(e).

Phase One lasted from approximately Monday, May 10, 2021 through the morning of Thursday, May 13, 2021. During Phase One the Court held a jury trial during which the jury heard evidence and argument concerning the factual questions at the core of this slip-and-fall

case, that is, whether Wal-Mart was liable to Golding for Golding's injuries and what damages, if any, Wal-Mart owed to Golding. (*See generally* Docs. 106; 107; 108.) On the morning of Friday, May 14, 2021, the jury returned a verdict in Golding's favor. The jury found "[f]or Plaintiff Golding and against Defendant Wal-Mart," that "Plaintiff Golding suffered damages caused by Defendant Wal-Mart's negligence," that "Plaintiff Golding failed to mitigate her damages" such that "the amount of her damages should be reduced accordingly," and that "Plaintiff Golding should recover for her injuries" total damages of $250,000. (Docs. 91; 92; 110 at 3–5.)

Before the jury was dismissed, Plaintiff orally moved under O.C.G.A. § 9-11-68(e) to recover reasonable and necessary attorneys' fees and expenses of litigation due to having to defend frivolous claims or defenses by the opposing party. This oral motion commenced Phase Two of the trial. In support of the motion Plaintiff referred the Court to a published decision by the Eleventh Circuit, *Showan v. Pressdee*, 922 F.3d 1211 (11th Cir. 2019). In *Showan* a panel of the Eleventh Circuit examined O.C.G.A. § 9-11-68(e) and held that a prevailing party in a jury trial "has a right to a hearing if it requests one" under the statute. *Id.* at 1228. The *Showan* court reversed a district court, which had denied a hearing upon finding that the pleadings were not frivolous "as a matter of law." *Id.* at 1228.

Accordingly, over Wal-Mart's objection, the Court kept the jury and held a second phase of trial. During Phase Two the jury was tasked with determining whether Plaintiff was entitled to damages in the form of attorneys' fees and litigation expenses due to Wal-Mart presenting an allegedly frivolous claim or defense. (*See* Doc. 110 at 11– 13.) The Parties presented evidence and argument on the issue of whether Wal-Mart had presented a frivolous defense for the rest of the day on Friday, May 14, 2021 and on Monday, May 17, 2021. On the afternoon of Monday, May 17, 2021, the jury retired to deliberate again and, later that evening, returned a verdict in Golding's favor. (Doc. 111 at 130–31.) The jury found that "Defendant Wal-Mart Stores East, LP has asserted a frivolous claim, defense, or position," that "Plaintiff Pamela Golding should receive damages from Defendant Wal-Mart," and that "Plaintiff Golding should receive from Defendant Wal-Mart" damages of $9,000. (Docs. 93; 94; 111 at 130–31.)

**DISCUSSION**

The Court has carefully considered the Parties' arguments on Wal-Mart's motions and reviewed the relevant evidence and parts of the record. For the reasons below, Wal-Mart's Amended Renewed Motion for Judgment as a Matter of Law (Doc. 115) is **DENIED**. Wal-Mart's Motion for New Trial as an Alternative to Motion for Judgment as a Matter of Law (Doc. 117) is **DENIED**. Wal-Mart's Amended Motion for Judgment as a Matter of Law on Plaintiff's Claim for Attorneys' Fees and Expenses Under O.C.G.A. § 9-11-68(e) (Doc. 116) is **GRANTED**. Finally, Wal-Mart's Renewed Motion for Mistrial or, in the Alternative, Motion for New Trial and Motion for Sanctions for Plaintiff's Counsel's Misconduct at Trial (Doc. 114) is **DENIED**.

**I.   Wal-Mart's Amended Renewed Motion for Judgment as a Matter of Law (Doc. 115)**

In its Amended Renewed Motion for Judgment as a Matter of Law (Doc. 115), Wal-Mart argues (as it did in its original motion during trial) that it is entitled to judgment as a matter of law on all liability issues based on the evidence presented at trial. (Doc. 115.) Under Federal Rule of Civil Procedure 50(a)(2), a party may move for judgment as a matter of law "before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). If a district court does not grant the motion, the movant may file "a renewed motion," under Rule 50(b), after trial. Fed. R. Civ. P. 50(b). The standard for granting either a pre-verdict or a renewed motion for judgment as a matter of law is whether the evidence is "legally sufficient . . . to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). *See generally Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (alteration in original) (quoting 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2537 (2d ed. 1995)).

In considering whether the verdict is supported by sufficient evidence, "the court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party." *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995). The Eleventh Circuit has emphasized that it "is the jury's task—not [the court's]—to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Shannon v. Bellsouth Telecomms., Inc.,* 292 F.3d 712, 715 (11th Cir. 2002) (quoting *Lipphardt v. Durango*

4

*Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001)). *See generally McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (explaining the foregoing). Judgment as a matter of law is appropriate only when "the facts and inferences point so overwhelmingly in favor of one party that reasonable people could not arrive at a contrary verdict." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010) (citation, quotation marks, brackets, and ellipsis omitted).

Wal-Mart argues it is entitled to judgment as a matter of law based on the evidence presented at trial. The evidence presented at trial showed that Wal-Mart inspected the site of Golding's fall three times shortly before Golding fell. (Doc. 115-1 at 1); (*Id.* at 8) ("[T]he undisputed witness testimony shows, and the store security video confirms, that three different Walmart associates were cleaning or inspecting the floor in the area where Plaintiff slipped three separate times, all within 30 minutes before the accident.") According to Wal-Mart the fact that three separate inspections occurred establishes beyond dispute that its inspection was "reasonable as a matter of law," which purportedly defeats Golding's negligence action in its entirety. (*Id.* at 1.)

The Court is unpersuaded, for two reasons. First, Wal-Mart is incorrect that, under Georgia law, establishing that an inspection is "reasonable as a matter of law" alone defeats a plaintiff's negligence action. Second, the evidence presented at trial did not establish "as a matter of law" that Wal-Mart's inspection of the area of the fall was reasonable.

The Court first concludes that Wal-Mart is incorrect that, under Georgia law, establishing an inspection is "reasonable as a matter of law" alone defeats a plaintiff's negligence action. Wal-Mart is incorrect in this assessment, because whether an inspection is "reasonable as a matter of law" goes to whether the defendant had constructive knowledge of the hazard that injured the plaintiff, an essential element of a slip-and-fall action. *See generally Robinson v. Kroger Co.*, 493 S.E.2d 403, 414 (Ga. 1997) (holding that, to prevail on a slip-and-fall claim in Georgia, a plaintiff must prove, among other things, "(1) *that the defendant had actual or constructive knowledge of the hazard*; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." (Emphasis added.)). A plaintiff can choose between one of two alternative methods to prove a defendant's constructive knowledge. (1) "[B]y evidence that an employee

was in the immediate area of the hazard and could easily have discovered and removed it," or (2) "by showing that the owner did not use reasonable care in inspecting the premises." *Taylor v. AmericasMart Real Estate, LLC*, 651 S.E.2d 754, 759 (Ga. Ct. App. 2007) (quoting *KMart Corp. v. Jackson*, 521 S.E.2d 93, 96 (Ga. Ct. App. 1999)). Because a plaintiff can establish a defendant's constructive knowledge using *either* method, the fact that a defendant's inspection was "reasonable as a matter of law" is not dispositive as Wal-Mart now claims. To defeat the entire negligence claim, the defendant must establish *both* that the inspection was reasonable *and* that no employee was in the immediate area who could easily discover and remove the hazard. *See id.*[1]

Wal-Mart, in asking this Court to grant judgment as a matter of law, says nothing about whether the evidence at trial showed that no Wal-Mart employee was in the immediate vicinity who could have easily discovered and removed the puddle of water that caused Golding to slip. Indeed, Golding's counsel argued during closing argument that one of the ways the jury could find Wal-Mart liable was to find that an employee was in the immediate area around when Golding slipped. (Doc. 108 at 284 ("[O]ne of the things the judge told you was if Walmart's employee was in the immediate area of the hazard and could have easily seen the substance. This water is not hard to see and it had already been smeared after she stepped in it. It's there.").) Because Wal-Mart fails to address that issue, Wal-Mart has failed to meet its burden as the moving party in showing it is entitled to judgment as a matter of law. Fed. R. Civ. P. 50.[2]

_____

[1] Wal-Mart cites five cases from the Georgia Court of Appeals ostensibly stating that, if a defendant establishes its inspection procedure as reasonable as a matter of law, it summarily defeats the plaintiff's negligence action. (Doc. 115-1 at 8–9.) *Brown v. Host/Taco Joint Venture*, 699 S.E.2d 439, 443 (Ga. Ct. App. 2010); *Wallace v. Wal-Mart Stores, Inc.*, 612 S.E.2d 528, 529–32 (Ga. Ct. App. 2005); *Bolton v. Wal Mart Stores, Inc.*, 570 S.E.2d 643, 645 (Ga. Ct. App. 2002); *Roberson v. Winn-Dixie Atlanta, Inc.*, 544 S.E.2d 494, 495 (Ga. Ct. App. 2001); *Hopkins v. Kmart Corp.*, 502 S.E.2d 476, 478–79 (Ga. Ct. App. 1998). But Wal-Mart omits key context from those cases and misconstrues the law stated therein. Each of those cases acknowledges that constructive knowledge can be proven through two methods, *either* by showing the defendant's lack of reasonable inspection *or* by showing that an employee of the defendant was immediately nearby who could have seen and removed the hazard. Each case addressed both questions. To whatever extent that any decision suggests that a defendant was entitled to judgment "because" it established that it's inspection was reasonable as a matter of law, such decision said so in the context of already having disposed of any alternative theory that a nearby employee could have seen and removed the hazard. Therefore, none of those cases cited support Wal-Mart's position here.

[2] It is not the Court's responsibility to scour the record on Wal-Mart's behalf to determine whether there is in fact evidence, as Plaintiff's counsel argued at closing, that there was a Wal-Mart employee immediately nearby

The second reason that this Court is not persuaded is that the evidence presented at trial did not establish "as a matter of law" that Wal-Mart's inspection of the area in which the fall occurred was reasonable. To show that an inspection is "reasonable as a matter of law" in Georgia, the defendant must present evidence showing not only that an employee visited the site of the fall shortly beforehand, but *also that the employee saw no hazard there*. (emphasis added.) *See, e.g., Brown v. Host/Taco Joint Venture*, 699 S.E.2d 439, 443 (Ga. Ct. App. 2010) (manager inspected the dining area floor fifteen minutes before the fall and saw that the floor "was clean and dry at that time"); *Wallace v. Wal-Mart Stores, Inc.*, 612 S.E.2d 528, 531 (Ga. Ct. App. 2005) ("[T]he unrefuted evidence shows that Rountree and Fleming had 'been through the area' fifteen to twenty minutes before the fall *and did not notice a grape on the floor*." (Emphasis added.)); *Bolton v. Wal Mart Stores, Inc.*, 570 S.E.2d 643, 645 (Ga. Ct. App. 2002) ("Wal-Mart's evidence that a different employee was in the exact area ten to fifteen minutes earlier *and that the floor was clear of any substance at that time* is unrefuted." (Emphasis added.)); *Roberson v. Winn-Dixie Atlanta, Inc.*, 544 S.E.2d 494, 495 (Ga. Ct. App. 2001) (employee had "inspected the floor approximately fifteen minutes before Roberson fell *and saw nothing on the floor*" (emphasis added)); *Hopkins v. Kmart Corp.*, 502 S.E.2d 476, 479 (Ga. Ct. App. 1998) ("[I]t is clear that the hazard was not present 30 minutes before the fall when the store manager inspected the area *and found no hazard*." (Emphasis added.)). *Cf. Taylor v. AmericasMart Real Est., LLC*, 651 S.E.2d 754, 759 (Ga. Ct. App. 2007) ("[A] jury 'may infer' constructive knowledge unless the owner or occupier of the premises shows 'not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident.' "). Here, Wal-Mart presented evidence that three of its employees (Hall, Johnson, and Rahman) visited the area of Golding's fall shortly beforehand (Doc. 108 at 110–12, 129, 139, 141–45, 164–65.) However, only one of those employees (Rahman) provided any statement or testimony about

---

who could have discovered and removed the hazard in which Golding slipped. *Cf. Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the material before it on summary judgment."); *2025 Emery Highway, L.L.C. v. Bibb Cty., Ga.*, 377 F. Supp. 2d 1310, 1333 (M.D. Ga. 2005) ("While such evidence may exist, it is surely not the duty of this Court to scour the record in an attempt to locate evidence which may raise a material question of fact on summary judgment."). That is Wal-Mart's responsibility as movant in this Rule 50 motion. Thus, even if Wal-Mart silently believes that there is no issue of fact as to whether an employee was immediately nearby when Golding slipped, Wal-Mart's failure to develop any argument on this question is fatal.

what they saw in the area. Accordingly, Wal-Mart can only establish the reasonableness of its inspection through Rahman's testimony.

Rahman testified that, some eleven minutes before Golding slipped, he had helped Golding with her shopping at the same spot she later fell and "didn't see anything on the floor when I was helping her in the area." (Doc. 108 at 112.) This testimony indeed supports Wal-Mart's position that its inspection was reasonable, especially given the closeness of time between Rahman's inspection and the fall. *E.g. Bolton*, 570 S.E.2d at 645. But it is not dispositive. On a motion under Rule 50, a court need not accept evidence favorable to the moving party where that evidence was impeached and comes from an interested witness. *WBY, Inc. v. DeKalb Cty., Ga.*, 766 F. App'x 852, 857 (11th Cir. 2019); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1312 (11th Cir. 2013). Here, Golding's counsel attacked Rahman's credibility as an interested witness, stating at closing argument, "Mr. Rahman is just trying to be the corporate man. He's saying what they want him to say[.]" (*See* Doc. 108 at 285). Since Rahman's credibility was reasonably in question, the jury reasonably could have chosen to disregard his testimony that he saw no hazard. As such, Rahman's testimony does not establish the reasonableness of Wal-Mart's inspection "as a matter of law."

For all the reasons above, Wal-Mart has not shown that it is entitled to judgment as a matter of law against Golding's liability claims. Wal-Mart's Amended Renewed Motion for Judgment as a Matter of Law (Doc. 115) is **DENIED**.

## II.     Wal-Mart's Motion for New Trial as an Alternative to Motion for Judgment as a Matter of Law (Doc. 117)

Wal-Mart next asks that, if the Court denies Wal-Mart's Motion for JMOL (Doc. 115), the Court should at least order a new trial because the Court failed to give the jury the correct instructions and verdict form. (Doc. 117-1 at 1.) Specifically, Wal-Mart contends that the jury instructions and verdict form were erroneous for two reasons. First, Walmart contends that the jury instructions misstated the law regarding the consequences of a defendant's adherence to its own reasonable inspection procedures in maintaining the premises. Second, Walmart contends that the jury instructions misstated the law on apportionment (in particular, Georgia law on comparative fault). (Doc. 117-1 at 1.)

The Court examines jury instructions and verdict forms "as a whole to determine whether they fairly and adequately addressed the issue and correctly stated the law." *Gowski v. Peake*, 682 F.3d 1299, 1314 (11th Cir. 2012); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1072 (11th Cir. 1996) (explaining that the standard for jury instructions also applies to verdict forms). "Motions for new trial on the basis of erroneous and prejudicial jury instructions [or verdict forms] are committed to the discretion of the trial court and reviewed" by the Court of Appeals to "ascertain whether there has been a clear abuse of that discretion." *Christopher v. Cutter Lab.*, 53 F.3d 1184, 1190 (11th Cir. 1995). However, appellate courts will review challenged jury instructions *de novo* to "determine whether they misstate the law or mislead the jury" resulting in "prejudice to the objecting party." *Preis v. Lexington Ins. Co.*, 279 Fed.Appx. 940, 944 (11th Cir. 2008); *U.S. v. Brown*, 441 F.3d 1330, 1368 (11th Cir. 2006); *Palmer v. Board of Regents*, 208 F.3d 969, 973 (11th Cir. 2000).

Under the foregoing standard, the Court addresses each issue in turn.

## A.   Jury Charge on Reasonable Inspection

Wal-Mart argues that the Court gave insufficient jury instructions regarding a defendant's duty to conduct reasonable inspections in maintaining its premises. (*See* Doc. 117-1 at 6–7, 10–11.) The Court gave the following instruction:

> To establish constructive knowledge, Ms. Golding must show by a preponderance of the evidence that (1) Wal-Mart's employee was in the immediate area of the hazard and could have easily seen the substance or (2) the foreign substance remained long enough that ordinary diligence by Wal-Mart's employees should have discovered it. Constructive knowledge may be inferred by you, the jury, when there is evidence that the owner lacked a reasonable inspection procedure. But if Ms. Golding produces no evidence that the substance could have been discovered during a reasonable inspection, then no inference arises that Wal-Mart's failure to discover the defect was the result of any alleged failure to inspect.

(Doc. 82 at 6.) Wal-Mart argues that the Court's instruction incorrectly states the law because it fails to instruct the jury that, if a defendant successfully conducts a reasonable inspection, the defendant is not liable as a matter of law. (Doc. 117-1 at 10–11.)

Wal-Mart suggests that the Court should have instead given the following instruction, which Wal-Mart timely requested at trial:

> A premises owner has a duty to exercise ordinary care in inspecting the premises to discover possible dangerous conditions of which the owner does not have actual knowledge and taking reasonable precautions to protect invitees from foreseeable dangers from the arrangement or use of the premises. *If the Defendant shows that an inspection occurred within a brief period of time to the invitee's fall, the inspection procedure is adequate as a matter of law and defeats an invitee's negligence action.*

(Doc. 41 at 36 (emphasis added by Wal-Mart in its Motion for New Trial, Doc. 117-1 at 6).) According to Wal-Mart, their proposed instruction is the correct and complete statement of law and this Court's failure to issue their proposed instruction to the jury prejudiced Wal-Mart. (Doc. 117-1 at 10–11.) In support, Wal-Mart relies on three cases from the Georgia Court of Appeals purportedly validating Wal-Mart's position. *See Mucyo v. Publix Super Mkts, Inc.*, 688 S.E.2d 372, 375 (Ga. Ct. App. 2009); *Wallace v. Wal-Mart Stores, Inc.*, 612 S.E.2d 528, 531–32 (Ga. Ct. App. 2005); *Super Disc. Mkts., Inc. v. Clark*, 443 S.E.2d 876, 877 (Ga. Ct. App. 1994). But Wal-Mart's proposed instruction is inadequate for two reasons. First, Wal-Mart's proposed instruction ignores the alternative method through which a plaintiff can prove constructive knowledge and second it is incomplete.

Wal-Mart's proposed instruction first ignores the alternative method through which a plaintiff can prove constructive knowledge: by showing that an employee was in the immediate area of the hazard and could have easily discovered and removed the hazard. *Taylor*, 651 S.E.2d at 759. Wal-Mart's proposed instruction misleadingly tells the jury that if a defendant shows that it used reasonable care in inspecting a premises, the defendant automatically wins, and the plaintiff cannot recover even if the plaintiff establishes constructive knowledge through the permitted alternative method. That is not the law, and such an instruction would potentially prejudice a plaintiff whose theory of liability includes evidence that an employee was immediately nearby who could have discovered and removed the hazard. (*See* Doc. 108 at 284 ("[O]ne of the things the judge told you was if Walmart's employee was in the immediate area

10

of the hazard and could have easily seen the substance. This water is not hard to see and it had already been smeared after she stepped in it.").)[3]

Second, Wal-Mart's proposed instruction is incomplete because it fails to instruct that, for a defendant to avoid liability on the ground that its inspection was reasonable, the evidence must show not only that an inspection occurred *but also* that the employee inspecting found no hazard. *See, e.g.*, *Brown*, 699 S.E.2d at 443; *Wallace*, 612 S.E.2d at 531; *Bolton*, 570 S.E.2d at 645; *Roberson*, 544 S.E.2d at 495; *Hopkins*, 502 S.E.2d at 479. Wal-Mart's proposed instruction misleadingly suggests that Wal-Mart can avoid being attributed with constructive knowledge by showing only that an employee visited the accident site beforehand, regardless of whether that employee found a hazard there. This distinction is important here, where, as explained above in Part I, Wal-Mart asserts that three of its employees (Hall, Johnson, and Rahman, as noted) visited the site of Golding's fall shortly beforehand, but only one of those three employees testified at trial.

Accordingly, the Court rejects Wal-Mart's argument that it erred in failing to give Wal-Mart's proposed jury instruction. (Doc. 41 at 36.)

### B.    Jury Charge on Apportionment of Fault under O.C.G.A. § 51-12-33(a)

Wal-Mart next argues that the Court erred by failing to provide a jury charge and corresponding verdict form that instructed the jury to apportion percentages of respective liability between Golding and Wal-Mart for Golding's slip and fall at Wal-Mart as well as Golding's failure to mitigate her damages. (Doc. 117-1 at 2–5, 8–10.)

Georgia law requires that,

> Where an action is brought against one or more persons for injury to person or property and the plaintiff is to some degree responsible for the injury or damages claimed, the trier of fact, in

---

[3] Wal-Mart cites three additional cases ostensibly supporting Wal-Mart's argument that it is correct to instruct the jury that, if a defendant shows that it inspected the accident site shortly before the accident, the defendant's inspection was reasonable as a matter of law, which defeats the plaintiff's negligence action in its entirety. *Mucyo v. Publix Super Mkts, Inc.*, S.E.2d 372, 375 (Ga. Ct. App. 2009); *Super Disc. Mkts., Inc. v. Clark*, 443 S.E.2d 876, 877 (Ga. Ct. App. 1994); *Carlton v. Wal-Mart Stores, Inc.*, 234 F. Supp. 2d 1358, 1364-65 (S.D. Ga. 2002) *aff'd sub nom Carlton v. Wal-Mart Properties, Inc.*., 85 F. App'x 726 (11th Cir. 2003). Once again, Wal-Mart omits key context and misconstrues the law as NONE of those cases support Wal-Mart's proposition. Each case acknowledges that (1) the lack of a reasonable inspection is one of two alternative ways to establish a defendant's constructive knowledge and (2) for a defendant to avoid being attributed with constructive knowledge due to a lack of reasonable inspection, there must be evidence both that an inspection happened and that the inspecting employee found no hazard.

> its determination of the total amount of damages to be awarded, if any, shall determine the percentage of fault of the plaintiff and the judge shall reduce the amount of damages otherwise awarded to the plaintiff in proportion to his or her percentage of fault.

O.C.G.A. § 51-12-33(a). As such, Georgia's Suggested Pattern Jury Instructions, Volume I: Civil Cases includes the following pattern charge, which courts may give where § 51-12-33 applies:

> If you believe that the plaintiffs are entitled to recover and further find that the plaintiff is to some degree responsible for the injury or damages claimed, you should make a finding on the percentage of negligence/responsibility but should not make any reduction because of the negligence, if any, of the plaintiff. The court will enter a judgment based on your verdict and, if you find that the plaintiff was negligent in any degree, the court in entering judgment will reduce the total amount of damages by the percentage of negligence which you attribute to the plaintiff. If you find that the negligence of plaintiff is equal to or greater than the negligence of the defendant, then the plaintiff is not entitled to recover damages. [Citing O.C.G.A. § 51-12-33.]

*Georgia Suggested Pattern Jury Instructions, Volume I: Civil Cases, Fifth Edition, August 2019*: 66.810 Tort Damages; Apportionment of Damages.

Wal-Mart requested the foregoing charge in its Request to Charge No. 13 (Doc. 41 at 23). Further, Wal-Mart and Golding jointly proposed a verdict form that permitted the jury to apportion fault between the Parties by a percentage decided by the jury. (Doc. 45.)

The Court gave the following charge instead:

> In this case, Wal-Mart claims and contends that Ms. Golding was negligent, that is, failed to exercise ordinary care. I charge you that every person has a duty to use ordinary care for his or her own safety. If you believe that Wal-Mart has proven by a preponderance of the evidence that Ms. Golding, by the exercise of ordinary care, could have discovered the hazard and avoided it, then she is not entitled to recover and you must find for Wal-Mart. Ms. Golding's duty to exercise ordinary care to avoid the consequences of Wal-Mart's negligence does not arise until Wal-Mart's negligence exists and Ms. Golding knew or, in the exercise of ordinary care, should have known of such negligence.

(Doc. 82 at 6–7) The Court also provided a verdict form that asked yes/no questions of (I.) whether the jury found for either Golding or Wal-Mart, (II.(a)) whether the jury found that

Golding suffered damages caused by Wal-Mart's negligence, (II.(b)) whether the jury found that Golding failed to mitigate her damages such that the amount of damages should be reduced accordingly, and (III.) what total amount of damages Golding should recover. (Doc. 91.)

Wal-Mart contends that the Court's charge and verdict form was "confusing and erroneous" and "misled the jury with respect to the applicable law," thereby prejudicing Wal-Mart. (Doc. 117-1 at 8.) Wal-Mart accordingly argues that it is entitled to a new trial. (*Id.*)

The Court rejects Wal-Mart's argument for three reasons. First, Wal-Mart failed to clearly raise its present argument that the apportionment statute and language was required for Golding's slip and fall during the trial, but rather made it clear that Wal-Mart wanted an equal knowledge charge and that the apportionment statute and language should apply to Golding's MRSA injuries. (Doc. 108 at 235, 242-43.) Second, Georgia Courts recognize that whether a plaintiff exercised ordinary care in following a doctor's instructions to care for a wound is a question concerning the mitigation of damages, not comparative fault. *See U.S. Fid & Guar. Co v. Paul Assocs., Inc.*, 496 S.E.2d 283, 289 (Ga. Ct. App. 1998). Third, Wal-Mart has failed to show that any purported error by the Court caused Wal-Mart prejudice.

### 1. *Wal-Mart Failed to Clearly Raise its Present Argument During Trial.*

First, Wal-Mart did not clearly present the argument that the apportionment statute and language was required for Golding's slip and fall during the trial, when any purported error could have been easily prevented or corrected.[4] *See* Fed. R. Civ. P. 51(c)(1) ("A party who objects to an instruction or the failure to give an instruction must do so on the record, *stating distinctly the matter objected to and the grounds for the objection*." (Emphasis added.)). While Wal-Mart may have raised a generalized objection to the lack of apportionment charge at trial, the stated reasons for the objection and other requests at trial as to this issue were not clear. Wal-Mart's requests and objections at trial were not clear because Wal-Mart would go on to request an

---

[4] Here, Wal-Mart argues that the Court should have given the apportionment charge so that the jury could apportion liability between Golding and Wal-Mart with respect to Golding's initial slip-and-fall injury at Wal-Mart. (Doc. 117-1 at 4–5, 9.)

"equal knowledge" charge with respect to the slip-and fall injuries, which this Court ultimately gave. (Doc. 108 at 242–43.[5])

As discussed above, the jury was to decide two general questions of liability: (1) whether Wal-Mart should be held liable for Golding's initial slip and fall injury at Wal-Mart (her fractured thumb, etc.), and (2) whether Wal-Mart should be held responsible for the MRSA infection injures that Golding developed later in the surgery site necessitated by her earlier slip-and-fall injuries. During trial, when Wal-Mart requested the apportionment charge, they made it clear that it should apply to Golding's *MRSA injuries* (not her *initial slip-and-fall injuries*) so that the jury could apportion liability between Golding and Wal-Mart depending on Golding's failure to exercise ordinary care in following her doctor's orders to keep her wounds clean and dry to avoid infection. (Doc. 108 at 235 ("MS. BECKNELL: The comparative negligence would be in relation to the damages that she sustained as the MRSA infection.").)

Wal-Mart never argued at trial that the jury should apportion liability between Golding and Wal-Mart for Golding's *slip and fall at Wal-Mart*. For most of this case, Wal-Mart did not assert a theory that Golding had equal knowledge as Wal-Mart of the hazard that caused her fall or that she could have avoided falling exercising reasonable care. That theory did not become realistically available to Wal-Mart until late in the trial, when Golding admitted on cross examination that, while shopping, she saw employees using floor scrubbers and intentionally avoided them because she knew they could be dangerous. (Doc. 108 at 81.) But even when Wal-Mart adopted this theory, Wal-Mart did not clearly request an instruction and verdict form to empower the jury to apportion liability on Golding's slip-and-fall injuries. Wal-Mart's requests and objections at trial were not clear with respect to the slip-and-fall injuries, because Wal-Mart also requested an "equal knowledge" charge. (Doc. 108 at 242–43.) The Court ultimately gave that charge. (*See* Doc. 82 at 6 ("Ms. Golding must specifically prove . . . that . . . Ms. Golding lacked knowledge of the hazard or for some reason, attributable to Wal-Mart, was prevented from discovering it."), 6–7 ("If you believe that Wal-Mart has proven by

---

[5] Wal-Mart's counsel specifically argued, "[W]e would object to the charge because [it] does not contain any charge regarding the plaintiff's equal knowledge of the hazard. She testified, and that would be adjusted to the evidence because she did testify that she saw the scrubbers in there, she didn't think it was safe to have them operating, so she stayed far away from them. So I think an equal knowledge charge would certainly be adjusted to the evidence and appropriate in this case." (Doc. 108 at 242–43.[5])

a preponderance of the evidence that Ms. Golding, by the exercise of ordinary care, could have discovered the hazard and avoided it, then she is not entitled to recover and you must find for Wal-Mart.").)

In short, the Court was not provided an adequate opportunity to address, prevent, or fix the purported problems that Wal-Mart complains of now. The Court thus declines to consider the merits of Wal-Mart's argument that the Court should have given the apportionment charge so that the jury could apportion liability between Golding and Wal-Mart with respect to Golding's initial slip-and-fall injury at Wal-Mart.

> 2.   *The Court Properly Rejected Wal-Mart's other Apportionment Argument at Trial*

Wal-Mart also contends that the Court erred by declining to include apportionment language regarding Golding's failure to properly care for her wound after surgery. The Court rejected that argument at trial, and for a sound reason. (Doc. 108 at 234–35.) Georgia courts recognize that whether a plaintiff exercised ordinary care in following a doctor's instructions to care for a wound is a question concerning the mitigation of damages. *See Butler v. Anderson*, 295 S.E.2d 216, 217 (1982) ("The trial court did not err in charging the jury that an injured plaintiff is under a duty to lessen damages by following the reasonable instructions and advice of her physicians insofar as is reasonably possible."). Georgia courts further distinguish mitigation of damages from comparative fault and have held that "[O.C.G.A. § 51-12-33], from the plain language, applies only to plaintiff's negligence in concurrently causing the injury or damages by contributory negligence, assumption of the risk, and comparative negligence; it does not apply to failure to mitigate damages or injury *after* the completion of the tort and injury or damages results." *U.S. Fid. & Guar. Co. v. Paul Assocs., Inc.*, 496 S.E.2d 283, 289 (Ga. Ct. App. 1998) (citing *Union Camp Corp. v. Helmy*, 367 S.E.2d 796 (Ga. 1988)). Therefore, the correct instruction under Georgia law regarding whether Wal-Mart should be held responsible for Golding's MRSA injuries was the instruction on a plaintiff's duty to mitigate damages. *See Butler v. Anderson*, 295 S.E.2d at 217; *U.S. Fid. & Guar. Co.*, 496 S.E.2d at 289. Indeed, the Court so instructed the jury. (*See* Doc. 82 at 8–9.)[6]

---

[6] In addition to asking for the apportionment instruction, Wal-Mart asked the Court to *also* give a mitigation instruction *in addition*. That is, Wal-Mart asked the Court to simultaneously instruct the jury with the Georgia pattern instructions for *both* apportionment—which involves apportioning a percentage of liability to the

3.     *Any Purported Error by the Court did not Prejudice Wal-Mart.*

In all events, the Court's failure to give the apportionment charge under O.C.G.A. § 51-12-33(a) did not prejudice Wal-Mart. The Court gave the alternative charge (quoted above) instructing the jury to consider whether Golding exercised ordinary care, just as the jury would with the apportionment instruction under O.C.G.A. § 51-12-33(a). The Court's charge differed, however, in that it instructed the jury to find *entirely* for Wal-Mart if the jury found that Golding failed to any degree in using ordinary care (rather than finding only *partly* for Wal-Mart and *partly* for Golding, as according to the apportionment statute). Thus, the Court gave, in effect, a classic contributory negligence charge rather than a comparative negligence charge.[7] As such, the jury was empowered to find that Golding failed to exercise ordinary care and so indicate on the verdict form.

However, the jury did not find that Golding failed to exercise ordinary care while shopping at Wal-Mart. That is clear because, if the jury had so found, the jury would have found for Wal-Mart and Golding would have recovered nothing. (*See* Doc. 91.) Instead, the jury found that Wal-Mart was liable, which necessarily included the finding that Golding did not fail to use ordinary care in discovering the hazard and avoiding the slip and fall. *See Sowers v. R.J. Reynolds Tobacco Co.*, 975 F.3d 1112, 1138 (11th Cir. 2020) (courts "not only can, but . . . must, presume that juries follow their instructions"). Therefore, regardless of whether the Court should have provided the apportionment charge under O.C.G.A. § 51-12-33(a) (which this Court does not decide at this time), the Court's choice not to do so did not prejudice Wal-Mart.

---

plaintiff, which has the ultimate effect of reducing the plaintiff's damages award—and for mitigation—which involves reducing the actual damages amount by a certain number. *See Georgia Suggested Pattern Jury Instructions, Volume I: Civil Cases, Fifth Edition, August 2019*: 66.015 Tort Damages; Duty to Lessen. This would have potentially confused the jury, and prejudiced plaintiff, by allowing the jury to effectively reduce Golding's award twice for the same negligence: first, by finding her negligent to some percentage (which would cause the Court to reduce the award proportionally), and again, by reducing Golding's damages by a certain amount for failure to mitigate.

[7] Generally, a classic contributory negligence charge is more preferable to defendants, as any degree of negligence by the plaintiff absolves the defendant entirely. By contrast, a comparative negligence charge is generally less preferable to defendants, as the defendant still might be held partially liable even though the plaintiff was negligent.

In summary, the Court is unpersuaded that any of the charges about which Wal-Mart complains were incorrect statements of the law, misleading, confusing, or prejudicial to Wal-Mart. Accordingly, the Motion for New Trial as an Alternative to Motion for Judgment as a Matter of Law (Doc. 117) is **DENIED**.

III. **Wal-Mart's Amended Motion for Judgment as a Matter of Law on Plaintiff's Claim for Attorneys' Fees and Expenses Under O.C.G.A. § 9-11-68(e) (Doc. 116)**

Next, Wal-Mart moves for Judgment as a Matter of Law ("JMOL") on all issues litigated during Phase Two of the trial. During Phase Two the jury was asked to determine whether Golding was entitled to attorneys' fees and litigation expenses under O.C.G.A. § 9-11-68(e) due to Wal-Mart allegedly presenting an allegedly frivolous claim, defense, or other position. (Doc. 116.)

Before the Court discusses the merits of Wal-Mart's motion, the Court details the facts relevant to the motion. As mentioned above, after the jury returned a $250,000 verdict in Golding's favor, Golding's counsel immediately moved under O.C.G.A. § 9-11-68(e) to recover reasonable and necessary attorneys' fees and litigation expenses for having to litigate frivolous claims or defenses presented by Wal-Mart. Plaintiff argued that O.C.G.A. § 9-11-68 (e) required such a hearing and in support of this argument referred the Court to a published decision by the Eleventh Circuit, *Showan v. Pressdee*, 922 F.3d 1211 (11th Cir. 2019), in which a panel of the Eleventh Circuit held that, under O.C.G.A. § 9-11-68(e), a prevailing party in a jury trial "has a right to a hearing if it requests one." *Id.* at 1228. A prevailing party has the right to hearing because O.C.G.A. § 9-11-68(e) provides that "the court *shall* hold a separate bifurcated hearing at which the finder of fact shall make a determination of whether such frivolous claims or defenses were asserted." For this reason, the *Showan* court reversed the district court, which had denied a hearing upon finding that the pleadings were not frivolous "as a matter of law." *Id.* at 1228. (Doc. 110 at 5–11.) Accordingly, over Wal-Mart's objection, this Court declined to dismiss the jury and held a second phase of trial so the jury, the finder of fact, could determine whether Golding was entitled to damages because Wal-Mart had presented a frivolous claim or defense. (*See* Doc. 110 at 11–13.)

The Parties presented evidence and argument for the rest of the day on Friday, May 14 and most of the day on Monday, May 17, 2021. (*See* Docs. 110; 111.) Golding's theory was

that Wal-Mart's liability defense was frivolous for two reasons. (*See* Doc. 111 at 37, 105–11.) First, Golding contended that Wal-Mart's liability defense was not brought "in good faith." *See* O.C.G.A. § 9-11-68(e)(1)(A) ("Frivolous claims shall include, but are not limited to, the following: A claim, defense, or other position . . . that is not made in good faith . . . ."); *see also* O.C.G.A. § 51-7-80(4) (defining good faith when used in reference to a civil proceeding) (Docs. 110 at 20–22; 111 at 106–08.)

Second, Golding argued that Wal-Mart brought its liability defense for the "wrongful purpose" of attempting to unjustifiably accomplish some ulterior or collateral purpose other than resolving the subject controversy on its merits. *See* O.C.G.A. § 9-11-68(e)(1)(A) ("Frivolous claims shall include, but are not limited to, the following: A claim, defense, or other position . . . that is made with . . . a wrongful purpose[.]"); *see also* O.C.G.A. § 51-7-80(8)(B) (" 'Wrongful purpose' when used with reference to any civil proceeding, claim, defense, motion, appeal, or other position results in or has the effect of . . . [a]ttempting to unjustifiably accomplish some ulterior or collateral purpose other than resolving the subject controversy on its merits."). (Doc. 111 at 108–10.) On this, Golding presented evidence that Wal-Mart had failed to preserve security camera footage from the night of Golding's fall showing other parts of the store, despite Golding's counsel's request at the time to preserve all relevant video. (Doc. 110 at 18; 111 at 108–09.) Golding argued that the lost footage would have been helpful to her case. (Docs. 110 at 18; 111 at 108–09.) Golding also showed that Sellers (one of Wal-Mart's floor managers who was on duty) completed an incident report immediately after Golding's fall in which he indicated that the water that caused Golding to slip might have come from Wal-Mart's floor scrubber machine. (*See* Docs. 102-1; 111 at 109–10.) Golding argued that it was unreasonable for Wal-Mart to present a liability defense based on the existence of this report. (Doc. 111 at 109–10.) Finally, Golding presented evidence that Wal-Mart had purposefully withheld disclosure of the higher-quality photographs until the eve of trial. (Doc. 111 at 107–08.)

Golding ultimately requested $187,000 in damages under O.C.G.A. § 9-11-68(e). (Doc. 111 at 111.) After closing arguments, the jury retired to deliberate and, later that evening, returned a verdict in Golding's favor, finding that "Defendant Wal-Mart Stores East, LP has

asserted a frivolous claim, defense, or position" and that Golding should receive damages of $9,000. (Docs. 93; 94; 111 at 130–31.)

Wal-Mart moved for a directed verdict three separate times during Phase Two of the trial: first, after Golding rested its case for Phase Two (Doc. 110 at 119–20); second, before the jury returned on the morning of Monday, May 17, 2021 and before Wal-Mart began its case-in-chief for Phase Two (Doc. 111 at 4–33, 47–48); and third, at the close of Wal-Mart's case-in-chief for Phase Two (Doc. 111 at 135). The Court reserved ruling on Wal-Mart's motions. (Doc. 111 at 49.)

Now renewing its motion for judgment as a matter of law, Wal-Mart argues that Golding's evidence in Phase Two was insufficient to establish frivolity under O.C.G.A. § 9-11-68(e). (Doc. 116-1 at 1–2, 6–14.) Wal-Mart also asserts that the evidence supporting its liability defense during Phase One of trial was strong enough that its liability defense was not frivolous as a matter of law. (*Id.* at 5–9.)

As explained above, a moving party under Rule 50 must show that the evidence at trial is "legally sufficient . . . to find for the party on that issue." Fed. R. Civ. P. 50(a)(2). "[T]he court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party." *Beckwith v. City of Daytona Beach Shores,* 58 F.3d 1554, 1560 (11th Cir.1995). Judgment is appropriate only when "the facts and inferences point so overwhelmingly in favor of one party that reasonable people could not arrive at a contrary verdict." *Brown v. Ala. Dep't of Transp.,* 597 F.3d 1160, 1173 (11th Cir. 2010) (citation, quotation marks, brackets, and ellipsis omitted).

The ultimate question posed by Wal-Mart's motion is whether the evidence at trial allowed the jury to reasonably find for Golding under O.C.G.A. § 9-11-68(e). That statute provides, in relevant part:

> Upon motion by the prevailing party at the time that the verdict or judgment is rendered, the moving party may request that the finder of fact determine whether the opposing party presented a frivolous claim or defense. In such event, the court shall hold a separate bifurcated hearing at which the finder of fact shall make a determination of whether such frivolous claims or defenses were asserted and to award damages, if any, against the party presenting such frivolous claims or defenses.

O.C.G.A. § 9-11-68(e). Under paragraph (1) of the statute, frivolous claims include, "but are not limited to," "claim[s], defense[s], or other position[s]" (A) that lack substantial justification, are not made in good faith, or are made with malice or a wrongful purpose, (B) with respect to which there existed such complete absence of any justiciable legal issue or factual issue that it could not reasonably be believed that a court would accept the asserted claim, defense, or other position, and (C) that were interposed for delay or harassment. O.C.G.A. § 9-11-68(e)(1). Under Georgia law, " 'Good faith,' when used with reference to any civil proceeding, claim, defense, motion, appeal, or other position, means that to the best of a person's or his or her attorney's knowledge, information, and belief, formed honestly after reasonable inquiry, that such civil proceeding, claim, defense, motion, appeal, or other position is well grounded in fact and is either warranted by existing law or by reasonable grounds to believe that an argument for the extension, modification, or reversal of existing law may be successful." O.C.G.A. § 51-7-80(4). Further, " 'Wrongful purpose' when used with reference to any civil proceeding, claim, defense, motion, appeal, or other position results in or has the effect of . . . [a]ttempting to unjustifiably accomplish some ulterior or collateral purpose other than resolving the subject controversy on its merits." O.C.G.A. § 51-7-80(8)(B).

Under those definitions, the Court finds that Golding's evidence at trial – during Phase Two – did not support a reasonable finding of frivolity. One of Golding's theories of frivolity was, essentially, a spoliation of evidence argument—that is, Wal-Mart's liability defense was frivolous as shown by its alleged efforts to destroy video evidence recorded on the night of Golding's fall. Golding's other theory was that Wal-Mart's liability defense was frivolous as shown by its withholding of higher-quality photographs of the accident scene until the eve of trial. But the Court is not convinced that either of these theories, which concern what could be putatively described as discovery misconduct, are material to whether a *defense* was frivolous.[8] Neither spoliation of evidence nor the untimely disclosure of certain evidence tends to make it more likely that a party believes that its defense is not "well grounded in fact and is either warranted by existing law or by reasonable grounds to believe that an argument for the extension, modification, or reversal of existing law may be successful." O.C.G.A. § 51-7-80(4).

---

[8] Although the Parties hotly contest this issue, the Court declines to resolve at this time whether Wal-Mart in fact engaged in discovery misconduct. The issue was never properly presented to the Court as such.

Likewise, neither example of alleged discovery misconduct is conclusive evidence that a party is bringing a defense to "unjustifiably accomplish some ulterior or collateral purpose other than resolving the subject controversy on the merits," O.C.G.A. § 51-7-80(4), or for any other frivolous purpose enumerated in or within the purview of § 9-11-68(e). That is because such discovery matters do not directly concern the substantive facts and merits of the liability defense itself—rather, they concern how Wal-Mart might have *litigated* its defense. A meritorious defense or claim could still exist. Section 9-11-68(e) authorize damages where a claim or defense lacks merit; meanwhile, a plaintiff has other remedies for an opposing party's misconduct during the act of litigating a defense, particularly for alleged discovery abuses, such as moving for sanctions under Federal Rules of Civil Procedure 11 or 37.[9]

Golding also argued that Wal-Mart's liability defense was frivolous as shown by the fact that Sellers completed an incident report on the night of Golding's fall stating that the puddle of water that caused Golding to slip might have come from the floor scrubber. (Doc. 111 at 109.) Unlike the evidence of Wal-Mart's purported discovery misconduct, Sellers' incident report is directly relevant to the merits of Wal-Mart's liability defense, as shown by the fact that Wal-Mart spent some time on redirect examination of Sellers trying to mitigate the damaging impact of the incident report to Wal-Mart's case. (*See* Doc. 108 at 150–52.) Still, the Court does not find the report so damaging to Wal-Mart that it is sufficient to support a finding by a reasonable jury that Wal-Mart should never have presented a liability defense at all. Sellers' report indicates that Sellers was not entirely confident whether the hazard came from the floor scrubber. (*See* Doc. 19-4 at 8 (describing that the water "looked like" it came from the scrubber "if possible").) Moreover, Sellers consistently opined thereafter that the video footage indicated that the hazard probably came from something else. (*Id.* at 9.) Accordingly, this evidence is not dispositive regarding the merits of Wal-Mart's liability defense—in other words, a bona fide controversy remained, even with this evidence. Wal-Mart is certainly not required to forego its day in court to litigate the bona fide controversy.

---

[9] A motion in limine by Plaintiff remains marked as pending on the docket, in which Plaintiff asks the court for permission during trial to cross examine Wal-Mart's witness about "past discovery abuses." (Doc. 83.) As explained above, past discovery abuses are not sufficiently relevant to whether Wal-Mart's liability defense was frivolous under O.C.G.A. § 9-11-68(e). The Court implicitly denied Plaintiff's motion at trial and herein restates and reaffirms that Plaintiff's Motion in Limine (Doc. 83) is **DENIED** for the reasons stated in this Order.

*Cf. McNair v. McNair*, 805 S.E.2d 655, 659 (Ga. Ct. App. 2017) ("No [one] is bound to forego litigation at the expense of yielding rights apparently well-founded. Where there is a bona fide controversy for the tribunals to settle, . . . there should be no burdening of one with the counsel fees of the other . . . .").

In addition, Wal-Mart presented ample evidence at trial supporting its liability defense. (*See generally* 116-1 at 5–9.) Wal-Mart presented evidence that it lacked constructive knowledge because it had reasonable inspection procedures and followed them. This included video evidence suggesting that Hall, the floor scrubber, was looking for spills to avoid leaving water on the ground; that Johnson was carefully mopping up water on the ground; that water left by the scrubber would not have lasted long enough for Plaintiff to slip in it roughly half-an-hour later; and that an employee (Rahman) visited the area approximately 11 minutes before the fall and "didn't see anything on the floor." (Doc. 108 at 112.) Wal-Mart also elicited an admission from Golding on cross examination indicating that she might have had equal knowledge of hazard because she saw floor scrubbers when she walked into the store and knew that it was a good idea to avoid them. (Doc. 108 at 81–82.) All this evidence is strong support and justification for Wal-Mart's liability defense, preventing a jury from reasonably finding that Wal-Mart's claim (defense) was brought in bad faith, for a wrongful purpose, or for some other frivolous reason.[10]

For all the reasons above, the Court finds that no jury could find, reasonably, that Wal-Mart's liability defense was frivolous under O.C.G.A. § 9-11-68(e). Even evaluating and viewing the totality of the evidence at trial "in the light most favorable to the non-moving party," *Beckwith*, 58 F.3d at 1560, the Court finds that "the facts and inferences point so overwhelmingly in favor of" Wal-Mart on the issues raised under § 9-11-68(e) that "reasonable people could not arrive at a contrary verdict," *Brown*, 597 F.3d at 1173. Wal-Mart's Amended

---

[10] Wal-Mart also argues that the jury's finding that Golding failed to mitigate her damages reflects that Wal-Mart's liability defense is not frivolous. (Doc. 116-1 at 4–6.) The Court, however, considers Wal-Mart's mitigation defense to be distinct from its liability defense. Indeed, Wal-Mart characterized these issues as separate in both its opening statement and closing argument. (*E.g.*, Doc. 108 at 299.) Accordingly, the fact that Wal-Mart's mitigation defense was successful is not dispositive to whether the liability defense was frivolous. Of course, mitigation of damages is related to liability and, as a result, is not entirely irrelevant to the frivolity issue.

Motion for Judgment as a Matter of Law on Plaintiff's Claim for Attorneys' Fees and Expenses Under O.C.G.A. § 9-11-68(e) (Doc. 116) is **GRANTED**.[11]

IV. **Wal-Mart's Renewed Motion for Mistrial or, in the Alternative, Motion for New Trial and Motion for Sanctions for Plaintiff's Counsel's Misconduct at Trial (Doc. 114)**

Finally, Wal-Mart renews its motion for a mistrial or, in the alternative, motions for a new trial and moves this Court to sanction Plaintiff's Counsel for misconduct at trial. (Doc. 114.) Therein, Wal-Mart requests that the Court grant Wal-Mart "a new trial pursuant to Fed. R. Civ. Pro. 59 and Local Rule 7.1 and that the Court sanction Plaintiff's counsel for the misbehavior." (Doc. 114 at 1.) The Court will first address (A) Wal-Mart's motion for a mistrial or, in the alternative, motion for a new trial and then (B) Wal-Mart's request that the Court sanction Plaintiff's Counsel and Plaintiff Golding.

A. **Renewed Motion for Mistrial or, in the Alternative, Motion for New Trial**

Wal-Mart argues that it is entitled to a mistrial or, in the alternative, a new trial due to the repeated misconduct of Plaintiff's Counsel and Plaintiff Golding.[12] Wal-Mart specifically points to Plaintiff's Counsel's misconduct in the following portions of Phase One: opening statements, the witness sequestration issue, witness testimony, closing statements as well as the alleged misconduct of Plaintiff's Counsel and Plaintiff Golding during Phase Two.

As this Court has already granted Wal-Mart's motion on the issue of attorneys' fees – thereby vacating the jury's findings in Phase Two – the Court shall only assess any prejudicial effect of Plaintiff's Counsel's misconduct during Phase One when determining whether a mistrial or new trial is warranted. This is because the misconduct in Phase One is what Wal-

---

[11] Wal-Mart raises two alternative arguments as to why it is entitled to judgment as a matter of law on all issues arising under O.C.G.A. § 9-11-68(e). For one, Wal-Mart alternatively argues that Golding is not entitled to recover anything under O.C.G.A. § 9-11-68(e) because she has not satisfied the requirements under § 9-11-68(a)–(d). (Doc. 116-1 at 2.) In addition, Wal-Mart argues that that Plaintiff is not entitled to recover anything under O.C.G.A. § 9-11-68(e) because she never provided notice of a potential claim under that statute before trial. (Doc. 116-1 at 14.) Because the Court grants Wal-Mart's Motion (Doc. 116) for the reasons explained above, the Court declines to address Wal-Mart's alternative arguments at this time.

[12] The Court notes that Defendant does not allege that the Court made any evidentiary errors, for which the standard of "harmless error" would apply. *See Aetna Casualty & Surety Co. v. Gosdin*, 803 F.2d 1153, 1160 (11th Cir. 1986).

Mart contends affected the initial jury verdict as to the issue of liability. The Court also declines to consider the comments and conduct that occurred outside the presence of the jury when determining whether a mistrial or new trial is warranted – specifically the witness sequestration issue – because what the jury did not witness cannot have prejudiced the jury. Therefore, this Court must decide whether Wal-Mart is entitled to a mistrial, or a new trial based on Plaintiff's Counsel's alleged misconduct during: (1) opening statements, (2) witness testimony, (3) closing arguments.

Before the Court discusses the merits of Wal-Mart's motion the Court details Plaintiff's Counsel's alleged misconduct that occurred during Phase One. Plaintiff's Counsel engaged in misconduct during (1) opening statements, (2) witness testimony and (3) closing arguments. The misconduct that Wal-Mart argues substantially prejudiced the jury during opening statements involved Plaintiff's Counsel improperly attempting to present evidence and argument to the jury on eight (8) separate occasions.[13] This was despite Defense Counsel's repeated objections, the Court sustaining those objections, the Court instructing Plaintiff's Counsel as the purposes of opening statements and the Court issuing three curative instructions to the jury regarding the limitations of opening statements. (Doc. 106 at 19-50.) The Court notes, however, that everything presented in opening statements that was objected to, ultimately came into evidence without objection, except for Exhibit 14.[14] (Doc. 107 at 48, 50, 51; Doc. 108 at 102-104.) Given that everything objectionable during opening statements ultimately came into evidence this Court finds that the opening statements to the extent it was misconduct was insufficient to prejudice the jury such that a new trial is required.

Wal-Mart next contends that Plaintiff's Counsel's conduct during witness testimony also substantially prejudiced the jury. The misconduct during witness testimony took the form

---

[13]Plaintiff's Counsel first attempted to discuss the burden of proof. (Doc. 106 at 19.) Second, made affirmative statements about what the law is and the parties' respective responsibility in premises liability cases. (*Id.*, at 20-21.) Third, attempted to present evidence on his PowerPoint that had yet to be admitted into evidence. (*Id.*, at 24.) Fourth, presented an exhibit to a deposition in his PowerPoint during opening statements. (*Id.*) Fifth, attempted to show a video exhibit that was not yet admitted. (*Id.*, at 26.) Sixth, presented evidence in the form of witness/incident statement (*Id.*, at 30.) Seventh, presented evidence in the form of Dr. Floyd's testimony. (*Id.*, at 41-42.) Eighth, attempted to present a "demonstrative exhibit" that listed everything that the Plaintiff may have experienced as a result of her injury. (*Id.*, at 45-47.)

[14] The objection to Exhibit 14 was overruled by this Court.

of Plaintiff's Counsel making inappropriate comments about the quality of the photographs he was presenting to the jury.[15] It is Wal-Mart's position that Plaintiff's Counsel purposefully made two (2) comments to insinuate that it was Wal-Mart's fault that the photographs were of poor quality, thereby impugning Wal-Mart's credibility and prejudicing the jury. (Doc. 131 at 3.) Plaintiff's Counsel replies that the comments were merely a spontaneous reaction (Doc. 123 at 9.)

The first inappropriate comment involved Plaintiff's Counsel apologizing for the quality of the photos. (*See* Doc. 107 at 75) ("I apologize for the quality [of these photos] but that's what I got from Walmart.") This Court admonished Plaintiff's Counsel to not provide commentary about the quality of the photographs, "[t]he jury can see that." (Doc 107 at 75.) The Court finds that this comment while inappropriate did not prejudice the jury, due to Wal-Mart's prompt objection and this Court issuance of a curative instruction. (*Id.*)

The second inappropriate comment that Wal-Mart argues was prejudicial was in response to Wal-Mart's offer to allow Plaintiff's Counsel to use the original photographs. (*See* Doc. 107 at 76) (Ms. Becknell: "We have the originals if Mr. King wants them. Mr. King: Well, if you've got better quality than what we've got, I'm happy to --.) The Court interjected before Plaintiff's Counsel could complete that statement. Shortly thereafter, outside the presence of the jury, the Court reminded both parties that commentary about out of court matters and the motives of the other party, were not appropriate to discuss in front of the jury. (Doc. 107 at 97.) The Court is not convinced, however, that the comments substantially prejudiced the jury. The Court is not convinced, because the Court provided curative instructions as to the first comment, and the second comment was not completed.

Wal-Mart is correct, however, that Plaintiff's Counsel's conduct during closing arguments was highly improper *and prejudicial.* During closing arguments, Plaintiff's Counsel shouted ad hominem attacks at Defense Counsel on three (3) separate occasions. First, Plaintiff's Counsel claimed that Defense Counsel was either incompetent or lying to the jury.

---

[15] To clarify the facts regarding what preceded this commentary, it was Plaintiff's Counsel's contention that Wal-Mart purposefully provided Plaintiff's Counsel with low quality photographs during the discovery period. The morning of the first day of trial, however, Wal-Mart produced higher quality photographs – the originals – that depicted the scene in clearer detail.

(See Doc. 108 at 321-322) ("[T]here's one of two things you have to conclude about Ms. Becknell, one of two things, she is incompetent … or she is lying to you.") Second, Plaintiff's Counsel shouted that Walmart was lying about the testimony a Doctor would have presented had he appeared at trial. (Doc. 108 at 322) ("[T]hey [Wal-Mart] had every opportunity to bring Dr. Helman here, and [shouting] Walmart is lying to you and telling you he would have said something different.") Finally, Plaintiff's Counsel insinuated that despite Defense Counsels' collective education they were incompetent as attorneys. (Doc. 108 at 325) ("But Ms. Becknell, Ms. Dizon, law school educated, had all this time and they got this wrong.") The Court interjected after each of these personal attacks on Defense Counsel to instruct Plaintiff's Counsel to not engage in personal comments about opposing counsel because they were not parties to this case, to remind Plaintiff's Counsel that the purpose of closing arguments was to discuss evidence, not air personal grievances and to instruct the jury to "disregard personal comments about other counsel." (Doc. 108 at 322-325.) Plaintiff's Counsel's conduct during closing arguments was highly inappropriate, extremely unprofessional, in direct violation of this Court's instructions and had the capacity to prejudice the jury.

The Court does not agree, however, that these ad hominem attacks, even in combination with the inappropriate commentary during witness examination and Plaintiff's Counsel's objectionable opening statement, substantially prejudiced the jury such that a mistrial or a new trial is warranted. According to the United States Court of Appeals for the Eleventh Circuit "[a] defendant is entitled to a grant of mistrial only upon a showing of substantial prejudice." *United States v. Chastain*, 198 F.3d 1338, 1352 (11th Cir. 1999). "A trial judge has discretion to grant a mistrial since he [or she] is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007). The standard for vacating a jury verdict and granting a new trial is found in Fed. R. Civ. P. 59.

Pursuant to Rule 59:

> The Court may, on motion, grant a new trial on all or some of
> the issues – and to any party – as follows:
>> (A) after a jury trial, for any reason for which a new trial
>> has heretofore been granted in an action at law in federal
>> court.

"The standard for determining whether a jury verdict should be set aside as a result of misconduct of Counsel is whether the conduct was 'such as to impair gravely the calm and dispassionate consideration of the case by the jury.'" *BankAtlantic v. Blythe Eastman Paine Webber, Inc.,* 955 F.2d 1467, 1474 (11th Cir. 1992) (quoting *Allstate Insurance Co. v. James,* 845 F.2d 315, 318 (11th Cir. 1988). Given that the standard for the grant of a mistrial in this context is the same as the standard for granting a new trial, the Court shall analyze Wal-Mart's requests simultaneously.

To grant Wal-Mart's motion this Court must find that Plaintiff's Counsel's misconduct at trial was so pervasive as to impair the jury's calm and dispassionate consideration of the case. *See BankAtlantic,* 955 F.2d 1474. The relevant factors in making that determination "are the number of errors, the closeness of the factual disputes, the prejudicial effect of the evidence, the instructions given, and whether counsel intentionally elicited the evidence and focused on it during the trial." *Aetna Casualty & Surety Co. v. Gosdin,* 803 F.2d 1153, 1160 (11th Cir. 1986).[16] "Reversal on the basis of [counsel's] misconduct requires that the misconduct be so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. Weinstein,* 762 F.2d 1522, 1542 (11th Cir. 1985), *cert denied,* 475 U.S. 1110 (1986).

Misconduct by an attorney becomes so pronounced and persistent that it permeates the entire atmosphere of the trial when it is left unchecked. Therefore, "whether the district court gave a curative instruction is critical to determining" whether a new trial is warranted. *Cephus v. CSX Transp., Inc.* 771 Fed. Appx. 883, 894 (11th Cir. 2019) (whether the district court gave a curative instruction is critical to determining the court abused its discretion in not granting a new trial). When a trial court "does give a curative instruction," [the United States

---

[16] Defendant's argument that it is entitled to a new trial rests entirely on Plaintiff's Counsel's numerous objectionable acts and statements. Therefore, the number of occurrences and this Court's responses are the factors that this Court will focus its analysis and determination of sufficient error for granting Wal-Mart the requested relief.

Court of Appeals for the Eleventh Circuit] has determined that the instruction may render potentially prejudicial remarks harmless." *Id.* (quoting *Cote v. R.J. Reynolds Tobacco Co.,* 909 F.3d 1094, 1105 (11th Cir. 2018). However, given that "a jury cannot always be trusted to follow instructions to disregard improper statements," the fact that this Court gave numerous curative instructions and sustained Defendant's objections is not dispositive. *United States v. McLain*, 823 F.2d 1457, 1462 n. 8 (11th Cir. 1987).

Wal-Mart argues that Plaintiff's Counsels repeated acts of misconduct during Phase One were so frequent and egregious that despite Wal-Mart's objections and this Court's instructions, the calm and dispassionate consideration of the jury was disturbed. In support of its motion for a mistrial, or in the alternative a new trial Wal-Mart cites *United States v. Crutchfield*, 26 F.3d 1098 (11th Cir. 1994) and *United States v. McLain*, 823 F.2d 1457 (11th Cir. 1987).

In *Crutchfield*, a new trial was granted due to the prosecutor engaging in "multiple and continuing instances of intentional misconduct that prejudicially affected the substantial rights" of the defendants. *Crutchfield*, 26 F.3d at 1103. The *Crutchfield* court in granting the new trial highlighted the prosecution's repeated attempts to elicit irrelevant and highly prejudicial testimony in the presence of the jury. *Id.*, at 1100. The prosecutor in *Crutchfield* purposefully elicited irrelevant prejudicial testimony on direct examination, purposefully elicited prejudicial testimony on cross examination "solely to suggest the poor character of [the defendant]" and purposefully inquired into specific bad acts that did not result in a criminal conviction, "in violation of Federal Rule of Evidence 608(b)." *Id.* It was the *Crutchfield* court's conclusion that the prosecutions actions in that case substantially prejudiced the jury against the defendant.

In *McLain* the United States Court of Appeals for the Eleventh Circuit also granted a new trial, but only in part due to the misconduct of the prosecutor. *See McLain*, 823 F.2d 1462. The misconduct of the prosecutor in *McLain* was comprised of the prosecutor continuously making "critical remarks about the character of appellant McLain's counsel" and repeatedly accusing defense counsel of "intentionally misleading the jurors and witnesses and of lying in court." *McLain*, F.2d 1462. The *McLain* court in granting a new trial emphasized the fact that "the prosecutor's misconduct did not permeate the entire atmosphere of the trial. Instead, it was the cumulative effect of the errors committed by the judge and prosecutor that denied the

defendants a fair trial." (emphasis added) *Id.* The trial judge in *McLain* committed error by insisting that the trial be completed as scheduled, which resulted in "the discipline and decorum, inherently necessary to proceedings, to unravel." *Id.*, at 1460. For example, the trial judge in *McClain* permitted the jury to sleep, stand, and eat during the trial. *See Id.*, at 1461.[17] It was the opinion of the court in *McLain* that the prosecutorial misconduct in that case while egregious was insufficient to "permeate the entire atmosphere of the trial" because it was secondary to the unravelling of the discipline and decorum of the courtroom. *Id.*, F.2d at 1462.

The Court finds that Defendant's reliance on *Crutchfield* and *McLain* is misplaced for three reasons. First, the prejudicial effect of Plaintiff's Counsel's misconduct at trial was mitigated by this Court's prompt and appropriate curative instructions – which Wal-Mart has acknowledged. (See Doc 114-1 at 13) ("The Court acted swiftly and appropriately to address the constant issues of improper conduct.") As the United States Court of Appeals for the Eleventh Circuit in *Cephus* noted, the fact that a district court gave curative instructions is critical to determining whether a new trial is warranted. 771 Fed. Appx. 894. While it is true that a jury cannot always be trusted to follow instructions and disregard improper statements, the Court finds that the Court's curative instructions during Phase One were not so numerous as to numb the jury as to their significance.

Second, the prejudicial effect of Plaintiff's Counsel's misconduct during Phase One was not so "pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *Weinstein*, 762 F.2d 1542. Here, Wal-Mart contends that Plaintiff's misconduct permeated the entire atmosphere of the trial, based upon eight (8) objectionable attempts to introduce evidence in opening statements, two (2) potentially impugning comments during witness examination and three (3) ad hominem attacks during closing arguments. This Court finds that Plaintiff's Counsels attempts to introduce evidence during opening statements and the comments during witness examination, however, were not as prejudicial as the prosecutor's misconduct in *Crutchfield*. In *Crutchfield*, the prosecutor intentionally introduced defendant's prior bad acts in violation of Fed. R. Evid. 608(b), which is highly prejudicial. By comparison

---

[17] A notable example of how the discipline and decorum of *McLain* trial deteriorated can be found in one juror's request to open the blinds so that they could watch an ongoing parade during the trial. *Id.*

during opening statements Plaintiff's Counsel improperly attempted to discuss the burden of proof and attempted to show the jury some evidence that would later be properly admitted without objection. In addition, the improper comments were immediately addressed by this Court and did not introduce highly prejudicial evidence.

Finally, this Court concludes that while Plaintiff's Counsel's ad hominem attacks against Defense Counsel – calling them liars and incompetent – during closing arguments were highly improper and not by any means condoned by this Court, those attacks – even with the objectionable opening statement and improper commentary – are insufficient without something more egregious to merit a new trial. This Court is led to this conclusion by the United States Court of Appeals for the Eleventh Circuit's reasoning in *McLain*. The *McLain* court found that similar conduct by a prosecutor – even undertaken continuously – was not sufficient to permeate the entire atmosphere of the trial such that it would merit reversal by itself.[18] Instead, it was the cumulative effect of the errors committed by the trial judge and prosecutor in addition to the inattentiveness of the jurors that denied the defendants in *McLain* a fair trial. Following the direction of the *McLain* court, this Court finds that the ad hominem attacks on Defense Counsel, while highly inappropriate, were insufficient to permeate the entire atmosphere of the trial, such that a new trial is required.

Finally, in the present case this Court made no effort to rush the trial, the jurors were attentive and undertook their duty without issue and therefore the Court finds that the discipline and decorum inherently necessary for a fair trial were maintained. Therefore the Court finds that Wal-Mart's reliance on *Crutchfield* and *McLain* is misplaced. As this Court concludes that the misconduct in Phase One was not substantially prejudicial, in part due to this Court immediately and consistently issuing curative instructions Wal-Mart's Motion for a Mistrial or in the Alternative a New Trial is **DENIED**.

---

[18] The prosecutor continuously made "critical remarks about the character of appellant McLain's counsel" and repeatedly accused defense counsel of "intentionally misleading the jurors and witnesses and of lying in court." *McLain*, F.2d 1462.

**B. Issue of Sanctions**

Wal-Mart next requests that this Court exercise its inherent powers and sanction Plaintiff's Counsel for his repeated acts of misconduct during trial.[19] (Doc. 114-1 at 16.) The Court notes that Wal-Mart asked this Court to sanction Plaintiff's Counsel on several occasions during the trial for his repeated violations of this Court's orders and egregious conduct.[20] (Doc. 106 at 45; Doc 110 at 77; Doc 111 at 4.) And that this Court repeatedly warned Plaintiff's Counsel that if his misconduct continued, "the Court can only conclude that it's intentional, and if it's intentional and persist[s] the Court has the responsibility of sanctioning it and I will. This is the last notice on this." (Doc. 110 at 67.)[21] The only reason that this Court did not grant Wal-Mart's motion to sanction Plaintiff's Counsel during the trial is that it is this "Court's clear preference to let juries decide what juries decide," and as such the Court, consistent with that preference, was reluctant to grant a mistrial unless it was clearly necessary. (Doc. 110 at 64.)

The sanction Wal-Mart proposes is the same as the one Wal-Mart proposed during trial, a mistrial or a new trial. Wal-Mart cites no authority that stands for the proposition that a mistrial or a new trial is an appropriate award to the party moving for sanctions due to a counsel's misconduct.[22] As this Court has already concluded that a mistrial or, in the alternative, a new trial is not warranted, Wal-Mart's request that this Court sanction Plaintiff's Counsel by awarding a mistrial or a new trial as a sanction is **DENIED**. As previously noted,

---

[19] The Supreme Court has previously recognized a district court's inherent authority to levy sanctions for misconduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("a federal court has the power to control admission to its bar and to discipline attorneys who appear before it.")

[20] The Court notes that in its motion, Wal-Mart's Counsel also requests that this Court sanction Plaintiff Golding for her conduct at trial. (Doc. 114 at 11) To sanction a client under a district court's inherent power, an explicit finding of bad faith is required. *See Byrne v.* Nezhat, 261 F.3d 1075, 1123 (11th Cir. 2001). As this Court finds that the record is not sufficient to merit an explicit finding of bad faith on the part of Plaintiff Golding, Wal-Mart's motion to sanction Plaintiff Golding is **DENIED**.
[21] Given this record if this Court determines that sanctions are appropriate outside the grant of a new trial, it concludes that it would not be *sua sponte* as Wal-Mart's Counsel had requested sanctions and this Court had previously noticed Plaintiff's Counsel of their possibility.

[22] The Court also notes that this issue was discussed during Phase Two, where Wal-Mart noted that "[t]here is no case law directing us as to what do you do if counsel for plaintiff does some[thing] so egregious during this portion of the trial that a mistrial needs to be granted. And I think the Eleventh Circuit one way or the other is going to have to rule in on this." (Doc. 110 at 124.)

denial of Wal-Mart's motion is by no means approval or condonation of Plaintiff's Counsel's conduct.

## CONCLUSION

In summary, Wal-Mart's Amended Renewed Motion for Judgment as a Matter of Law (Doc. 115) is **DENIED**. Wal-Mart's Motion for New Trial as an Alternative to Motion for Judgment as a Matter of Law (Doc. 117) is **DENIED**. Wal-Mart's Amended Motion for Judgment as a Matter of Law on Plaintiff's Claim for Attorneys' Fees and Expenses Under O.C.G.A. § 9-11-68(e) (Doc. 116) is **GRANTED** and the jury's verdict of $9,000 for Phase Two of the trial is **VACATED**. Finally, Wal-Mart's Renewed Motion for Mistrial or, in the Alternative, Motion for New Trial and Motion for Sanction's for Plaintiff's Counsel's Misconduct at Trial (Doc. 114) is **DENIED**.

**SO ORDERED**, this _7th_ day of December 2021.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**